# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILSON CREEK ENERGY, LLC, | : | Case No. |
| | : | 3:23-cv-00697 |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| FREDERICK N. CUSHMORE, JR., FTC | : | Jury Trial Requested |
| PARTNERS, INC., | : | |
| | : | May 31, 2023 |
| *Defendants.* | : | |
| | : | |

## **COMPLAINT**

Plaintiff Wilson Creek Energy, LLC ("Wilson Creek," or the "Company") brings this complaint against Frederick N. Cushmore, Jr. ("Cushmore") and FTC Partners, Inc. ("FTC Partners," and, collectively, "Defendants") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on predicate acts of wire and mail fraud, money laundering, and structuring, and for claims under Connecticut law for breach of fiduciary duty, common law fraud, unjust enrichment, conversion, statutory theft, and violations of the Connecticut Unfair Trade Practices Act.

Over the course of several years, during which Cushmore managed the sale of coal produced by Wilson Creek domestically to its international customer base, Cushmore engaged in an unlawful scheme through which he obtained kickbacks on commissions Wilson Creek paid to its sales agent in Turkey. Cushmore facilitated this unlawful scheme by sending sham invoices to the sales agent for "consulting work" performed by his personal company, FTC Partners, although both Cushmore and the agent knew no such consulting work was ever performed and Cushmore was not entitled to any portion of the commissions tendered to Wilson Creek's foreign agents. On information and

1

belief, as a result of the unlawful scheme, which began, at the latest, in April 2018, and continued through at least June 2020, Defendants received hundreds of thousands of dollars in illegal kickbacks from agency fees that Wilson Creek and its officers and employees believed were paid legitimately to its Turkish sales agent.

In support of the aforementioned claims, Wilson Creek alleges and states as follows:

## PARTIES

1.      Wilson Creek is a limited liability company organized under the laws of Delaware with its headquarters and principal place of business located in Friedens, Pennsylvania.

2.      Cushmore is, upon information and belief, a resident of the State of Florida.  On or about October 3, 2016, Cushmore joined Wilson Creek as Vice President, Northern Appalachian Division Metallurgical Sales & Trading, which was a role that he performed principally out of his home office in Ridgefield, Connecticut, until his termination on or about October 8, 2020.

3.      FTC Partners is a Florida corporation with its principal place of business in Palm Beach Gardens, Florida. Cushmore and his wife, Patricia A. Cushmore, are the company's sole officers and directors.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Connecticut.

## FACTS

6.      Wilson Creek is in the business of selling metallurgical coal for the global steel industry from its underground and surface mine operations located in Pennsylvania and Maryland.

Wilson Creek hired Cushmore in October 2016 to revive its export business as demand and prices for metallurgic coal increased.

7.      Through his role in promoting and managing the Company's international sales, Cushmore developed a professional relationship with Aysan Ay ("Ay"), a sales agent in Turkey who was also a partner in Mid-Ship Group LLC, a freight company with which Wilson Creek's customers sometimes contracted to transport coal shipments internationally.  Ay also owned and/or operated a company called HB Maritime S.A. ("HB Maritime"), which served as the entity through which Ay conducted his agency work.

8.      Beginning in 2017, Cushmore and Ay worked together to submit bids for the sale of Wilson Creek's coal to Turkish steel companies.  In exchange for his role in helping to negotiate payment terms, freight arrangements, and ensure the fulfillment of other contractual commitments, Ay received an agency commission from Wilson Creek that was calculated on a dollar basis per metric tons ("mt") of coal sold.  On information and belief, Cushmore represented to Wilson Creek that the commission tendered to Ay was to be paid solely to Ay and/or his company, HB Maritime, and that the amount of the commission was customary in the industry and warranted by the services performed.  Cushmore further failed to disclose and took steps to conceal the kickback scheme alleged herein, including payments from Ay and/or HB Maritime, which represented a portion of the commissions the Company paid to Ay and/or HB Maritime and which were wholly unauthorized by the Company.

9.      On or about March 31, 2017, Wilson Creek executed a contract with Kardemir Karabuk Demir Celik ("Kardmir"), a steel producer in Turkey, for the sale of 80,000 mt coking coal +/-10%.  The parties' contract contemplated a shipment period of May 2017.

10.     In May 2017, Wilson Creek tendered a coal shipment to Kardemir, for which Ay

received a commission of $39,482.71 from Wilson Creek by wire transfer on or about June 22, 2017. The commission was calculated as $0.50/mt based on a total shipment of approximately 78,965 metric tons.

11.     Beginning in early 2018, Cushmore and Ay began tendering Wilson Creek's bids to Kardemir through another entity called Acemar, a private company incorporated in Switzerland that handled the payment terms with Kardemir on Wilson Creek's behalf.

12.     On April 19, 2018, in the course of asking Cushmore what he planned to offer for the price of coal in an upcoming tender, Ay wrote via Whatsapp, "Just include something for me (us) separate than Acemar." On information and belief, Ay's message was a request that Cushmore build in to Wilson Creek's bid an unauthorized commission to be shared between Ay and Cushmore. On information and belief, Cushmore honored this request, and fraudulently represented to Wilson Creek that a commission of approximately $2/mt to be paid out of the proceeds of the sale to Acemar was warranted based on legitimate work performed by Ay in connection with the sale and shipment of coal. Cushmore further represented that the commission was to be paid solely to Ay and/or HB Maritime.

13.     On July 16, 2018, Cushmore texted Ay his address in Ridgefield, Connecticut.[1] Ay wrote two days later, on July 18, "you will receive an envelope from DHL package latest by Monday."

14.     On or about September 17, 2018, Wilson Creek executed a contract with Acemar for the sale of 70,000 mt of coking coal +/-10%, with a contemplated shipping date between

---

[1]     On information and belief, Cushmore and Ay conducted all of their written mobile electronic communications through the encrypted Whatsapp application. For ease of reference, the terms "texted" or "text message" are used broadly to include communications transmitted via Whatsapp.

September 21 and September 30, 2018.

15.     Between September and October 2018, Wilson Creek shipped approximately 72,918 metric tons of coal to Acemar, for which Ay received a commission of $145,837.48 from Wilson Creek via wire transfer on or about November 16, 2018.

16.     On November 28, 2018, Cushmore texted Ay, "Should we set up invoicing?  Ie from my personal company?"  Ay responded, "Two options: 1) Will carry on partially cash basis plus checks and god knows how long it will take[;] 2) you will invoice me USA Coal export survey Report consultancy fee invoice and I will wire at once."  Cushmore wrote back, "I'd like to do both if possible.  Ie half in cash and check and balance in four invoices of ~ $9000."  He followed up with the text, "Don't want to make invoices more than $10k."  Ay responded, "I will arrange whatever is good to you and me no worries."  On information and belief, FTC partners is the "personal company" referred to by Cushmore.

17.     On December 24, 2018, Cushmore texted Ay his address in Palm Beach Gardens, Florida.  Ay responded, "Will take care of it."

18.     On January 7, 2019, after Cushmore wrote to Ay that his trip to Turkey scheduled for the following week had been postponed, Ay responded, "Ok I am in the office tomorrow[.]  Let me sit down and make the checks etc."

19.     On January 20, 2019, Cushmore wrote to Ay, "I'm not sure if you tried sending anything to me.  Our mail service is so F'd up between Connecticut and Florida. Have not had any mail forwarded for three weeks."  Ay responded by asking where Cushmore would be on February 6, and the two discussed meeting in New York.

20.     On January 24, 2019, Ay sent Cushmore the following text:

Good morning
5 – in NY

> 7 – ready tomorrow in NY
> 8 – ready on Monday in NY
> 8 – ready in Miami
> 8 – ready in Feb 6 in NY
> *total: 36*

21.     On February 1, 2019, Cushmore texted Ay, "as you suggested to count, I did and it was all there."

22.     On February 4, 2019, Ay texted Cushmore asking whether he could be at JFK between 11 a.m. and noon the next day.  Upon learning that Cushmore was not able to be in New York, Ay wrote, "we need to find someone to meet my female friend at JFK tomorrow or Wilmington, Del on Wednesday/Thursday/Friday."  Cushmore responded that he "will meet her in Wilmington on Friday."  Ay then provided an address for "Miss Dilek" in Wilmington, Delaware.  In his response Cushmore wrote, "Will be a long drive but worth it."  Ay wrote back, "This is perfect Fred.. she is a friend of my buddy and very very nice lady.  She is bringing this all the way from Istanbul for me and it helps us tremendously."

23.     On February 25, 2019, Cushmore texted Ay his address in Palm Beach Gardens, Florida and wrote, "Check should go to FTC Partners."

24.     On information and belief, Cushmore received approximately $72,918 in illegal kickbacks, or approximately one half of Ay's $145,837.48 commission for Wilson Creek's September 2018 contract with Acemar, via a series of payments from Ay.  The payments were sent via mail and/or delivered via in-person "packages," with each payment less than $10,000.

25.     On June 30, 2019, Cushmore sent Ay a text in which he indicated that he sent an offer to Acemar's Trade Director, Eser Avunduk, which included $1/mt "For service."

26.     On or about July 29, 2019, Wilson Creek executed a contract with Acemar for the sale of 240,000 mt of coking coal +/-10%, with the first shipment to be loaded between August 1 and 15, 2019, and the remaining shipments to occur between August and September 2019 per

mutually agreed upon laycans.

27.     Between August 2019 and September 2019, Wilson Creek tendered a series of coal shipments to Acemar totaling approximately 237,375 metric tons across four vessels.   In connection with these shipments, Ay received a total of $248,978.33 in commissions.   The commissions were paid by Wilson Creek via wire transfer in three payments: $61,852.36 on October 3, 2019; $56,782.89 on October 5, 2019; and $130,343.08 on November 6, 2019.

28.     On November 11, 2019, Ay texted Cushmore, "Need to see you," and asked, "Is there any place I can leave the docs other than Cengiz?"   The two then agreed to speak the next day by phone.   On November 14, 2019, Cushmore texted Ay, "When you are in nyc next week, can you fedex / DHL documents to me in Florida or to address in Connecticut?"

29.     On December 29, 2019, Ay texted Cushmore, "Good morning sir[.]  Please kindly send me the final statement.. I am about to arrange something in NY for you."   Cushmore responded, "Ok.  But there should be a series of invoices all not to exceed us$ 10000[sic] equivalent.  Or maybe depends on what you are planning in NY.  Will send statement."   Ay responded, "Ny is as of now is[sic] 25k.. it will be 30k by Jan 7-8 and 35k by 17."   Cushmore confirmed, "Ok."

30.     On January 2, 2020, Cushmore texted Ay, "I'm set up to pick up documents in New York from our friend week after next."   On January 4, 2020, Ay wrote, "I will take care of the invoice."

31.     On January 9, 2020, Cushmore texted Ay, "Was last transfer sent?"  Ay responded, "Yes[.] Pls check."  Cushmore wrote back, "I have been.  What day was it sent?  Should only take about Two business days for $ depending on how long banks hold on to money.  In this case, since in €, they may hold another day."  Ay responded that it had not been sent yet because of a problem

with the "decoder of the bank" and indicated he would check on it.

32.     On January 12, 2020, Cushmore followed up with a text to Ay stating, "Let me know about wire (above) so I can look for it."  Ay responded, "we have spoken with the bank. Their decoder switch doesn't work and asked for immediate replacement of same."

33.     On January 14, 2020, Ay reported, "Fred we have a problem with the pocket token of the bank.  It doesn't work and we asked for replacement[.]  Probably a matter of a week." Cushmore responded, "Not a problem."  That same day, Ay followed up by stating, "I haven[sic] 5 pieces in NY already and another 10 will be arriving on Friday.  Hopefully 15 will be ready in Miami[.]"  Cushmore responded, "Ok.  Great.  Dinner is still on for Wednesday correct??" and Ay confirmed that it was.

34.     On January 16, 2020, Ay wrote to Cushmore that his Miami trip was cancelled and said, "Let's talk and coordinate for the delivery of the documents."  Cushmore responded that he was in Florida.  Ay explained that he was staying in Long Island and that "Cengiz is meeting me tonight at JFK and I will deliver the papers to him" and later indicated that he would ask "Cengiz" to coordinate with Cushmore.

35.     On January 20, 2020, Cushmore wrote to Ay that he was at JFK and indicated that he would be meeting Cengiz in 45 minutes.  The next day, January 21, Cushmore texted Ay, "All docs in order."

36.     On January 28, 2020, Ay wrote to Cushmore, "We are still waiting a real enemy token to make transfers from this stupid bank.[]  Meantime I need you send me the next invoice so I can wire 2 at a time as soon as we receive the token.  Somehow it's got stuck in the customs and we told bank to wire as per our written instructions rather than by token."  Cushmore explained to Ay, "Ok. I don't have that computer with me.  So will only be able to send this on Friday.  Is

that ok?"  Ay confirmed that it was "no problem."

37.     On January 31, 2020, Ay wrote to Cushmore, "Another 8k is wired today."  Cushmore responded on February 2, 2020, "Just sent invoice."

38.     On February 5, 2020, Ay wrote to Cushmore, "Please invoice ir[sic] anytime dated this Friday."  Cushmore responded, "Ok.  Will do."

39.     On February 16, 2020, Cushmore wrote to Ay, "Documents arrived Friday."  Ay responded, "Very good[.]  Can you pls tell me what the final balance is so I can arrange it right away.. I delete those statements all the time."  Cushmore responded, "I'll be in nyc area this Friday so could pick up docs late that afternoon if he's there.  Otherwise, we will find another time."

40.     On March 17, 2020, Ay wrote to Cushmore, "Cengiz has returned to NY but he didn't pick up from me the package he was supposed to pick up.  He is under stress of work condition at the airport.  Once you hv position to see him, pls let me know and I will ask him to prepare.  I will settle it with him later."  Cushmore responded, "Ok.  I'm not in NY anyway for at least two weeks.  Can the package be 're-deposited' and sent by wire?  Presume it's with you then or already in USA."  Ay wrote back, "It's with me[.]  I will ask cengiz if he can do it and I reimburse him."  Cushmore responded, "How about sending by wire?  Or is this problematic?"  Ay responded, "I need to check if I can deposit and wire from Turkey."  Cushmore wrote back, "If too problematic, don't do it.  Would like to close out these deliveries but not essential."  Ay responded, "Will think how to complete.  You are right and I don't like to sit on something which isn't mine[.]"

41.     On April 10, 2020, Cushmore sent Ay an invoice for a "consultation fee" in an amount less than $10,000 and wrote, "Payment on that invoice will close that deal."

42.     On April 17, 2020, Cushmore texted Ay, "Funds received.  Thank you.  That deal now fully closed."  On information and belief, pursuant to this "deal," Cushmore received a total

of approximately $124,489, or half of what Cushmore had represented to Wilson Creek constituted Ay's legitimate commissions, in illegal kickbacks from Ay over the period beginning in November 2019 and ending in April 2020. The payments were issued via a combination of wire transfers, in-person "packages," and/or mail deliveries, with each payment in an amount less than $10,000.

43. On or about April 20, 2020, Wilson Creek executed a contract with Acemar for the sale of 70,000 mt of coking coal +-10% with a scheduled shipment date between May 3 and 13, 2020.

44. In May 2020, Wilson Creek shipped approximately 77,000 metric tons of Coal to Acemar, for which Ay received approximately $77,000 in commission from Wilson Creek via wire transfer.

45. On May 29, 2020, after Cushmore confirmed that Wilson Creek had wired the money for Ay's commission on the May 2020 vessel, Ay wrote, "Send me some invoices please." Cushmore responded, "Yessir."

46. On June 1, 2020, Cushmore texted Ay a copy of an invoice from FTC Partners with the note, "Sent yesterday. Once paid, will send the next one. Should be 4 of these total." Ay responded, "Thank you[.] Wiring first one now – pls confirm upon receipt."

47. On June 2, 2020, Ay wrote to Cushmore, "Money didn't go[.] Hopefully either today or tomorrow[.] Your invoice was a problem[.] I tell you if you call me today.. not a big deal.. just stupid Turkish tax regulation." Cushmore responded, "Ok. Tear it up will call you in about 30 mins."

48. On June 3, 2020, Ay wrote to Cushmore, "First invoice 9 and change k was wired on Monday. Pls check your bank and let me know tks." Cushmore responded on June 4, "$ not there yet but it took 3 days at least in past." Ay wrote, "I need the next invoice meantime."

10

Cushmore responded by texting an invoice from FTC Partners.

49.     Later that day, on June 4, Ay wrote to Cushmore, "Pls issue 4 or 5 invoices in total upto[sic] $40,000 (exact final amount) instead of $ 38,500 for HB's tax reasons.. extra amount $1,500 doesn't matter for me, we can settle it later or not..  Second invoice is also paid 2 hours ago."  Cushmore confirmed that he would handle it later and wrote, "First invoice may have been credited twice.  Will check in morning."

50.     On June 5, 2020, Cushmore texted Ay, "Two invoices paid / credited in one day. (?).  Ok fine.  But remaining two would then exceed 10k.  Can I make it into three?  If 40k and not 38.5 then 40k-(2x9650)= 20.7k.  How about 2 x 7500 and then 5700?"  Ay responded, "Perfect."

51.     On June 6, 2020, Cushmore wrote, "Just sent the three invoices," and texted Ay copies of three different invoices from FTC Partners: two invoices of $7,500 each, and a third invoice for $5,700.

52.     On June 11, 2020, Cushmore texted Ay, "2/3 invoices paid.  Thank you."  Ay responded, "Pleasure[.]  Will pay another one on Monday."

53.     On June 13, 2020, Ay texted Cushmore, "So 40k paid ?"  Cushmore responded, "Yup."  On information and belief, the $40,000 received by Cushmore and/or FTC Partners in illegal kickbacks constituted approximately half of the $77,000 commission paid to Ay by Wilson Creek in connection with the May 2020 shipment to Acemar.

54.     On July 28, 2020, Cushmore wrote to Ay, "I'm leaving for Florida over the weekend so may have to wait for my return (week of 10 August) to meet up with Cengiz."  Ay responded, "Ok noted, you can coordinate with him after his/your return and I am meantime waiting for you to invoice the balance."

55.     In addition to his receipt of monetary payments, Cushmore received other similarly

unauthorized gifts, benefits, and forms of compensation from Ay during the period of the unlawful scheme.

56.     On or about October 8, 2020, the Company terminated Cushmore's employment.

## CLAIMS TO RELIEF

## COUNT ONE: VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c) ("RICO") – as to all Defendants

57.     Wilson Creek repeats and realleges the foregoing paragraphs.

58.     Cushmore and FTC Partners, through the commission of at least two predicate acts, engaged in a pattern of racketeering activity and, together with Aysan Ay, participated in an enterprise, the activities of which affected foreign and interstate commerce.  Throughout the relevant time period Defendants and Ay constituted a group associated in fact, which functioned as a continuing unit with a common purpose.

59.     As described herein, the acts of racketeering activity committed by Defendants and Ay occurred within ten years of each other.  The predicate acts and other wrongful conduct of Defendants and Ay were related in that they involved the same or similar participants, purposes, results, methods, and victims of commission.  Defendants and Ay shared a common purpose of obtaining unlawful kickbacks from funds expended by Wilson Creek in connection with Wilson Creek's international sales business through a fraudulent course of conduct intended to deceive Wilson Creek and deprive Wilson Creek of a portion of Wilson Creek's proceeds from its to sales to Acemar and/or Kardemir.  The fraudulent course of conduct was undertaken with the purpose of enabling Defendants and Ay to obtain personal financial gain outside the strictures of Wilson Creek's legitimate business transactions.

### *Predicate Acts of Wire and Mail Fraud – 18 U.S.C. §§ 1341, 1343*

60.     Defendants knowingly and intentionally engaged in a scheme to defraud Wilson

Creek into paying what Cushmore represented to Wilson Creek were legitimate commissions to its Turkish sales agent, Aysan Ay, without disclosing that a portion of those commissions would be tendered to Defendants via wire transfers and "packages" delivered in person and via DHL or FedEx.  As the person responsible for managing Wilson Creek's international sales, Wilson Creek relied upon Cushmore and trusted in the truthfulness of his representations regarding such issues as the appropriate measure of compensation for an international sales agent.  Defendants made use of interstate mails and transmission facilities to further their unlawful scheme.  Defendants' commission of mail and wire fraud include, at minimum, the following acts:

    a.  On April 19, 2018, during a conversation in which he asked Cushmore what he planned to offer for the price of coal in an upcoming tender, Ay texted Cushmore via Whatsapp, "Just include something for me (us) separate than Acemar."

    b.  On or about July 18, 2018, Ay sent Cushmore a "package" via DHL which, on information and belief, constituted an unlawful payment and/or communications intended to further Defendants' and Ay's unlawful scheme.

    c.  In September 2018, Wilson Creek executed a contract with Acemar, which resulted in a shipment of approximately 72,918 metric tons of coal.  Approximately two weeks after Wilson Creek compensated Ay for his commission in connection with this shipment, on November 28, 2018, Defendants transferred sham invoices to Ay via email and/or Whatsapp for consulting fees that Cushmore never performed.

    d.  On information and belief, between January and February 2019, Cushmore and Ay arranged for Defendants to receive payments totaling approximately $72,918, which were delivered in various installments, each under $10,000, by courier and/or DHL or FedEx.  On information and belief, these payments constituted Cushmore's

illegal kickback for fees Wilson Creek paid to Ay in connection with Wilson Creek's September 2018 contract with Acemar.

e.  On June 30, 2019, Cushmore texted Ay that he had sent an offer to Acemar that included a commission of $1/mt "For service." Approximately one month later, on July 29, 2019, Wilson Creek contracted with Acemar for the sale of approximately 240,000 mt of coal, which was shipped across four vessels between August and September 2019. Ay received a commission from Wilson Creek in three installments via wire transfer between October 3 and November 6, 2019.

f.  Between November 2019 and April 2020, Defendants provided another series of sham invoices to Ay, for which Defendants received various payments via courier, wire transfer, and/or DHL or Fedex, each under $10,000, and totaling approximately $124,489. On information and belief, these payments constituted Cushmore's illegal kickback from fees Wilson Creek paid to Ay in connection with Wilson Creek's July 2019 contract with Acemar.

g.  On or about April 20, 2020, Wilson Creek executed a contract with Acemar for the sale of approximately 70,000 mt of coal, for which Ay received a commission of approximately $77,000 in May 2020. Between May 29 and June 13, 2020, Defendants provided another series of sham invoices to Ay, for which Defendants received various payments via wire transfer, each under $10,000, totaling approximately $40,000. On information and belief, these payments constituted Cushmore's kickback from fees Wilson Creek paid to Ay in connection with Wilson Creek's April 2020 contract with Acemar.

h. On July 28, 2020, Cushmore texted Ay that he expected to meet up with "Cengiz" the week of August 10, to which Ay responded, "I am meantime waiting for you to invoice the balance."

### *Predicate Acts of Money Laundering – 18 U.S.C. § 1956*

61.    Defendants knowingly conducted financial transactions that involved the proceeds of specified unlawful activity with the intent to promote the carrying on of that specified unlawful activity—namely, mail and wire fraud.  In addition, Defendants knew that the transactions were designed to conceal the nature, ownership, source, location, or control of the proceeds of mail and wire fraud and to avoid transaction reporting requirements.  On multiple occasions, beginning as early as July 2018 and continuing as late as July 2020, Defendants received funds that were misappropriated from Wilson Creek in connection with vessels of coal that Wilson Creek shipped to Acemar, using Ay as its sales agent.

62.    Each of these fraudulent transactions were designed to conceal the absence of any legitimate basis for the fees paid from Ay and/or HB Maritime to Cushmore and FTC Partners.

### *Predicate Acts of Structuring – 31 U.S.C. § 5324(a)*

63.    Beginning no later than November 2018 and continuing through at least July 2020, Defendants engaged in numerous instances of structuring, to include the following:

a. On November 28, 2018, Cushmore requested that Ay compensate him via a combination of cash and check payments pursuant to four invoices for sham "consultancy fees," writing, "Don't want to make invoices more than $10k."  Ay confirmed that he would make these arrangements.

b. On January 24, 2019, Ay confirmed five separate payments totaling $36,000, in the amounts of $5,000, $7,000, and three payments of $8,000 to be "ready" in different

locations.  On February 1, 2019, Cushmore confirmed that he counted "and it was all there."

    c.   On February 25, 2019, Cushmore directed that Ay mail him a payment via check made out to FTC Partners to his home address in Florida.

    d.   On December 29, 2019, Ay requested from Cushmore the "final statement," and Cushmore responded, "there should be a series of invoices all not to exceed us$ 10000[sic] equivalent."  Ay confirmed that he would have $35,000 available by January 17, 2020.

    e.   On June 3, 2020, Ay texted Cushmore, "First invoice 9 and change k was wired on Monday" and requested "the next invoice."  Cushmore responded on June 4 by texting an invoice in an amount less than $10,000.

    f.   Later that day, June 4, 2020, Ay requested that Cushmore issue four or five invoices up to $40,000 instead of $38,500 for tax purposes.  On June 5, 2020, Cushmore wrote back that two invoices had already been "paid  / credited" which meant "remaining two would then exceed 10k."  Cushmore asked, "Can I make it into three?  If 40k and not 38.5 then 40k-(2x-9650)=20.7k.  How about 2 x 7500 and then 5700?"  Ay responded, "Perfect."

    g.   On June 6, 2020, Cushmore texted Ay copies of three different invoices from FTC Partners: two invoices in the amount of $7,500, and one invoice for $5,700.

    h.   On June 13, 2020, Ay texted Cushmore, "So 40k paid ?"  Cushmore responded, "Yup."

    i.   On July 28, 2020, Ay requested that Cushmore "invoice the balance."

64.    Defendants engaged in the aforementioned structuring with knowledge that the

financial institutions involved were under a legal obligation to report any currency transaction in excess of $10,000, and Defendants acted with the intent to evade this reporting requirement and with the further intent to conceal their unlawful activity.

### *Injury to Wilson Creek's Business and Property*

65.     Wilson Creek was injured in its business and property by reason of Defendants' RICO violations.  On information and belief, Defendants deprived Wilson Creek of no less than $237,407 of the proceeds of its sales to Acemar and/or Kardemir, which were unlawfully retained by Defendants.

66.     Pursuant to 18 U.S.C. § 1964(c), Wilson Creek is entitled to treble damages and the costs of bringing the instant suit, including reasonable attorney's fees.

### COUNT TWO: CONSPIRACY TO VIOLATE RICO, 18 U.S.C. §§ 371, 1962(d) – as to all Defendants

67.     Wilson Creek repeats and realleges the foregoing paragraphs.

68.     By agreeing with Aysan Ay to commit the aforementioned related predicate acts of mail and wire fraud, money laundering, and structuring, and by doing so with the common purpose of defrauding Wilson Creek of the proceeds of its sales to Acemar and/or Kardemir for Defendants' personal gain, Defendants knowingly conspired with Ay to facilitate a pattern of racketeering activity.  The conspiracy began no later than April 2018 and continued through as late as July 2020.

69.     Wilson Creek has suffered injury to its business and property by reason of Defendants' conspiracy and pattern of racketeering activity.

### COUNT THREE: CONVERSION – as to all Defendants

70.     Wilson Creek repeats and realleges the foregoing paragraphs.

71.     In the course of his duties as Wilson Creek's head of international sales, Cushmore

misrepresented the nature of the commissions paid to Aysan Ay, with the intent that Cushmore and/or FTC Partners would retain a portion of those commissions without Wilson Creek's knowledge.

72.    Defendants were not entitled to exercise any right of ownership over the commissions Wilson Creek tendered to Ay or to any of its sales agents.  Thus, Defendants' retention of a percentage of the commissions constituted an unlawful conversion of Wilson Creek's funds.

**COUNT FOUR: STATUTORY THEFT - Conn. Gen. Stat. § 52-564 – as to all Defendants**

73.    Wilson Creek repeats and realleges the foregoing paragraphs.

74.    In addition to the aforementioned acts of conversion, Defendants' misappropriation of Wilson Creek's funds violates Connecticut's statutory theft statute, because Defendants knowingly and intentionally deprived Wilson Creek of its property.

75.    Defendants' theft of Wilson Creek's funds was undertaken pursuant to a continuing course of conduct that began no later than April 2018 and culminated no earlier than June 13, 2020.

76.    Defendants are accordingly liable for treble damages.

**COUNT FIVE: BREACH OF FIDUCIARY DUTY – as to Cushmore**

77.    Wilson Creek repeats and realleges the foregoing paragraphs.

78.    Cushmore, as a Vice President and agent of Wilson Creek, was a fiduciary with respect to matters within the scope of his agency.  Under Connecticut law, moreover, Cushmore owed Wilson Creek a fiduciary duty of loyalty by virtue of his employment relationship.

79.    Through the course of his employment, Cushmore was responsible for negotiating Wilson Creek's contracts with Acemar and Kardemir on Wilson Creek's behalf, and for negotiating the terms of any relationship between Wilson Creek and its international sales agents,

including Aysan Ay.

80.     Cushmore was obligated to act within the best interests of Wilson Creek in conducting its international sales, and to act in good faith in any matter concerning Wilson Creek, as his employer.

81.     By engaging in fraud and self-dealing and advancing his own interests to the detriment of Wilson Creek, Cushmore breached his fiduciary duty.

82.     As a result of Cushmore's breach of fiduciary duty, Wilson Creek has sustained damages.

### COUNT SIX: UNJUST ENRICHMENT – as to Cushmore

83.     Wilson Creek repeats and realleges the foregoing paragraphs.

84.     Through his unlawful scheme with Aysan Ay, Cushmore caused Wilson Creek to tender a greater amount of commissions to Ay than Ay was otherwise properly owed.  Moreover, by unjustly retaining a portion of commissions Wilson Creek paid to Ay agent without authorization, Cushmore received a financial benefit to Wilson Creek's detriment.

85.     Wilson Creek is accordingly entitled to restitution in the amount of commissions unlawfully retained.

### COUNT SEVEN: COMMON LAW FRAUD – as to Cushmore

86.     Wilson Creek repeats and realleges the foregoing paragraphs.

87.     In the course of negotiating the price Wilson Creek would tender for the sale of coal to Acemar and/or Kardemir, Cushmore represented to Wilson Creek that the price must account for a legitimate commission to be paid to Aysan Ay out of the proceeds from the sale.  On information and belief, Cushmore represented to Wilson Creek that Ay had requested a commission based on a certain dollar amount per mt of coal sold pursuant to Wilson Creek's

contracts with Acemar and/or Kardemir, and Cushmore further represented that such a commission was warranted by the work performed by Ay and the circumstances underlying the transactions. Cushmore additionally represented that the commission was to be paid solely to Ay and/or Ay's company, HB Maritime.

88.     Cushmore made the aforementioned representations to Wilson Creek knowing that they were false and intending to induce Wilson Creek's reliance to engage Ay as a sales agent at an inflated rate, knowing that such rate included an unlawful kickback to be paid to Cushmore and/or FTC Partners.  Wilson Creek reasonably relied upon Cushmore's representations based on his expertise in the international coal export industry, and based on the fact that payment of a commission was customary in Wilson Creek's business with its other international sales agents.

89.     As a result of Cushmore's fraud, Wilson Creek has suffered damages.

**COUNT EIGHT: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA") - Conn. Gen. Stat §§ 42-110b *et seq.* – as to Cushmore**

90.     Wilson Creek repeats sand realleges the foregoing paragraphs.

91.     By deceiving Wilson Creek into paying illegitimate commissions to Ay for his own personal benefit and/or for the benefit of FTC Partners, Cushmore engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce.

92.     Cushmore's unfair and deceptive acts or practices resulted in an ascertainable loss of money to Wilson Creek.

93.     Pursuant to Conn. Gen. Stat. § 42-110g, Wilson Creek seeks punitive damages and reasonable attorney's fees in connection with Cushmore's CUTPA violations.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Wilson Creek prays that the Court enter judgment in its favor and against Defendants and seeks the following relief:

a) Restitution and/or disgorgement of all profits and payments unlawfully retained;

b) An award of compensatory damages, the amount of which is to be determined at trial;

c) Punitive damages;

d) Trebled damages pursuant to 18 U.S.C. § 1964(c) and Conn. Gen. Stat. § 52-564;

e) Attorney's fees pursuant to 18 U.S.C. § 1964(c) and Conn. Gen. Stat. § 42-110g;

f) Prejudgment interest at the legal rate on the foregoing sums; and

g) Such other relief deemed appropriate and just by the Court.

Dated: May 31, 2023

Respectfully submitted,

*/s/ Brian E. Spears*
BRIAN E. SPEARS (ct14240)
LESLIE A. CAHILL (ct31242)
Spears Manning & Martini LLC
2425 Post Road, Suite 203
Southport, CT 06890
T: (203) 292-9766
F: (203) 292-9682
Email: bspears@spearsmanning.com
         lcahill@spearsmanning.com

*Counsel for Wilson Creek Energy LLC*