## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| **WILSON CREEK ENERGY, LLC,** | : | Case No. |
|  | : | **3:23-cv-00697-VLB** |
| *Plaintiff*, | : | |
| v. | : | |
|  | : | |
| **FREDERICK N. CUSHMORE, JR., FTC** | : | |
| **PARTNERS, INC.,** | : | |
|  | : | **June 16, 2023** |
| *Defendants*. | : | |
|  | : | |

## RICO CASE STATEMENT

Pursuant to this Court's Standing Order in Civil RICO Cases, Plaintiff Wilson Creek Energy, LLC ("Wilson Creek," or the "Company") submits the following RICO Case Statement.

### 1. The Alleged Unlawful Conduct

Wilson Creek brings this action against Frederick N. Cushmore Jr. ("Cushmore"), Wilson Creek's former Vice President of Metallurgical Sales & Trading, and his personal company, FTC Partners, Inc. ("FTC Partners," and, collectively, "Defendants") for, *inter alia*, violations of the civil RICO statute, and conspiracy to violate RICO, pursuant to 18 U.S.C. §§ 1962(c) and (d). *See* Compl. Counts One & Two, ECF No. 1. Over the course of several years, during which Cushmore managed the sale of coal produced by Wilson Creek domestically to its international customer base, Cushmore engaged in an unlawful scheme through which he obtained kickbacks on commissions Wilson Creek paid to its Turkish sales agent, Aysan Ay ("Ay.") Cushmore facilitated this unlawful scheme by

sending sham invoices to Ay for "consulting work" performed by FTC Partners, although both Cushmore and Ay knew no such consulting work was ever performed and Cushmore was not entitled to any portion of the commissions tendered to Wilson Creek's foreign agents.

As set forth below and in the Complaint, Cushmore, FTC Partners, and Ay participated in an enterprise that engaged in a pattern of racketeering activity, the activities of which affected foreign and interstate commerce.  In addition, by agreeing with Aysan Ay to commit related predicate acts of mail and wire fraud, money laundering, and structuring, and by doing so with the common purpose of defrauding Wilson Creek of the proceeds of its international sales for Defendants' personal gain, Defendants knowingly conspired with Ay to facilitate a pattern of racketeering activity.

**2.  Identity of the Defendants**

*a.  Frederick Cushmore*

Fred Cushmore is Wilson Creek's former Vice President, Northern Appalachian Division Metallurgical Sales & Trading.  Wilson Creek hired Cushmore on or about October 3, 2016 in an effort to revive the company's coal export business.  Cushmore performed his responsibilities for Wilson Creek principally out of his home office in Ridgefield, Connecticut, until his termination on or about October 8, 2020.  On or about October 9, 2020, after learning that Cushmore had engaged in the bribery of Egyptian government officials in an effort to obtain contracts for Wilson Creek to supply coal to an Egyptian state-owned entity, Wilson Creek, under the auspices of its parent company, Corsa Coal Corporation

("Corsa"), self-reported the misconduct to the United States Department of Justice.[1]  During the course of the internal investigation leading to Corsa's voluntary self-report, Wilson Creek first learned of Cushmore's misconduct with respect to the instant scheme.

Cushmore is liable for his direct role in committing the predicate acts that gave rise to the pattern of racketeering activity set forth below and in the Complaint, and for his role in conspiring with Aysan Ay via his personal company, FTC Partners, to engage in a pattern of racketeering activity with the purpose of defrauding Wilson Creek and depriving the Company of a portion of the commissions it expended in connection with its international sales.

### b.  FTC Partners

FTC Partners is a Florida corporation with its principal place of business in Palm Beach Gardens, Florida. Cushmore and his wife, Patricia A. Cushmore, are the company's sole officers and directors.  As the conduit through which Cushmore and Ay funneled the proceeds of their unlawful scheme, FTC Partners is liable for engaging in the pattern of racketeering activity set forth herein.

### 3.  Identity of Other Alleged Wrongdoers

Aysan Ay is a sales agent located in Turkey who owned and/or operated a company called HB Maritime, S.A. ("HB Maritime"), though which Ay conducted his agency work.  Ay was also a partner in Mid-Ship Group LLC, a freight company with which Wilson Creek's customers sometimes contracted to transport coal

---

[1]     Wilson Creek is a wholly owned subsidiary of Wilson Creek Holdings, Inc., which in turn is a wholly owned subsidiary of Corsa.

shipments internationally.  Beginning in 2017, Cushmore and Ay worked together to submit bids for the sale of Wilson Creek's coal to Turkish steel companies, including Kardemir Karabuk Demir Celik ("Kardmir").  In exchange for his role in helping to negotiate payment terms, freight arrangements, and ensure the fulfillment of other contractual commitments, Ay received an agency commission from Wilson Creek that was calculated on a dollar per metric tons ("mt") basis of coal sold.  Beginning in early 2018, Cushmore and Ay began tendering Wilson Creek's bids to Kardemir through another entity called Acemar, a private company incorporated in Switzerland that handled the payment terms with Kardemir on Wilson Creek's behalf.

By coordinating with Cushmore to defraud Wilson Creek and remit a portion of the commissions Wilson Creek paid Ay out of the proceeds of its sales to Acemar as illegal kickbacks to Cushmore and/or FTC Partners while concealing the nature and source of those payments, Ay engaged in a pattern of racketeering activity with Defendants.

4.  Identity of the Victim

Wilson Creek is a corporation organized under the laws of Delaware, with its headquarters and principal place of business located in Friedens, Pennsylvania. Wilson Creek is in the business of selling metallurgical coal for the global steel industry from its underground and surface mine operations located in Pennsylvania and Maryland.

On information and belief, as a result of Defendants' unlawful scheme, Wilson Creek was deprived of no less than $237,407 of the proceeds of its coal sales to

Acemar, which were remitted as illegal kickbacks to Defendants out of the agency fees that Wilson Creek and its officers and employees believed were paid legitimately to Aysan Ay.

**5. <u>Description of the Pattern of Racketeering Activity</u>**

Through their unlawful acts and use of the postal service and transmission of communications by wire in interstate and foreign commerce, Defendants and Ay engaged in a pattern of racketeering activity that spanned at least two to three years and participated in an enterprise, the activities of which affected foreign and interstate commerce. The pattern of racketeering activity engaged in by Defendants and Ay is based on the commission of at least two predicate acts of mail and wire fraud, money laundering, and structuring, as set forth below. The predicate acts and other wrongful conduct of Defendants and Ay were related in that they involved the same or similar participants, purposes, results, methods, and victims of commission.

*Predicate Acts of Wire and Mail Fraud – 18 U.S.C. §§ 1341, 1343*

Defendants knowingly and intentionally engaged in a scheme to defraud Wilson Creek into paying what Cushmore represented to Wilson Creek were legitimate commissions to Ay, without disclosing that a portion of those commissions would be tendered to Defendants via wire transfers and "packages" delivered in person and via DHL or FedEx. Cushmore represented to Wilson Creek that the commissions tendered to Ay were to be paid solely to Ay and/or his company, HB Maritime, and that the amount of the commissions was customary in the industry and warranted by the services performed. As the person responsible

5

for managing Wilson Creek's international sales, Wilson Creek relied upon Cushmore and trusted in the truthfulness of his representations regarding such issues as the appropriate measure of compensation for an international sales agent. Defendants made use of interstate mail and transmission facilities to further their unlawful scheme. Defendants' commission of mail and wire fraud include, at minimum, the following acts:

a. On April 19, 2018, during a conversation in which he asked Cushmore what he planned to offer for the price of coal in an upcoming tender, Ay texted Cushmore via Whatsapp, "Just include something for me (us) separate than Acemar."

b. On or about July 18, 2018, Ay sent Cushmore a "package" via DHL which, on information and belief, constituted an unlawful payment and/or communications intended to further Defendants' and Ay's unlawful scheme.

c. In September 2018, Wilson Creek executed a contract with Acemar, pursuant to which Wilson Creek shipped a total of approximately 72,918 metric tons of coal to Acemar between September 2018 and October 2018. On November 16, 2018, Ay received a commission from Wilson Creek of $145,837.48 in connection with the September 2018 contract. Approximately two weeks later, on November 28, 2018, Cushmore and Ay discussed via Whatsapp "carry[ing] on partially cash basis" with respect to their unlawful scheme as well as remitting payments to Cushmore and/or FTC Partners by a combination of

check and wire transfer.[2]  Cushmore then transferred a series of sham invoices, each under $10,000, to Ay via email and/or Whatsapp for consulting fees that Cushmore never performed.

d.  Between January and February 2019, Cushmore and Ay arranged for Defendants to receive payments in various installments, each under $10,000, by courier and/or DHL or FedEx.  For example, as set forth in the Complaint, on January 24, 2019, Ay texted Cushmore that he had "5 – in NY," "7 – ready tomorrow in NY," "8 – ready today in Monday in NY," "8 – ready in Miami," and "8 ready in Feb 6 in NY," for a total of "36."  On February 1, 2019, Cushmore texted Ay that he had counted "and it was all there."  Three days later, on February 4, 2019, Ay and Cushmore made arrangements via Whatsapp for Cushmore to pick up a "package" that Ay had arranged to be delivered from Istanbul.  On February 25, 2019, Cushmore provided Ay his address in Palm Beach Gardens, Florida, with the message, "Check should go to FTC Partners."  On information and belief, the payments to Defendants in connection with Wilson Creek's August 2018 and September 2018 shipments to Acemar totaled approximately $72,918, and constituted

---

[2]     In Ay's text of November 28, 2018, he presented two options to Cushmore: "1) Will carry on partially cash basis plus checks and god knows how long it will take" or "(2) you will invoice me USA Coal Export survey Report consultancy fee invoice and I will wire at once."  *See* Compl. ¶ 16.  Ay's reference to "carry[ing] on partially cash basis" suggests a continuation of a pre-existing unlawful scheme, which could include, at a minimum, the DHL "package" delivered following Ay's text on July 18, 2018.  Compl. ¶ 13.  It is therefore possible that discovery will reveal that Defendants' predicate acts of mail and wire fraud preceded the discussion between Cushmore and Ay in April 2018 of Wilson Creek's tender to Acemar.

Cushmore's illegal kickback for fees Wilson Creek paid to Ay as its sales agent.

e.  On June 30, 2019, Cushmore texted Ay that he had sent an offer to Acemar that included a commission of $1/mt "For service." Approximately one month later, on July 29, 2019, Wilson Creek contracted with Acemar for the sale of approximately 240,000 mt of coal, which was shipped across four vessels between August and September 2019.  Ay received a commission from Wilson Creek totaling $248,978.33 in connection with this contract in three installments via wire transfer between October 3 and November 6, 2019.

f.  Between November 2019 and April 2020, Cushmore provided another series of sham invoices to Ay, for which Defendants received various payments via courier, wire transfer, and/or DHL or FedEx, each under $10,000.  For example, on December 29, 2019, Ay texted Cushmore, requesting that he send him "the final statement," and indicating, "I am about to arrange something in NY for you."  Cushmore responded that "there should be a series of invoices all not to exceed us$ 10000[sic]."  Ay wrote back, indicating that he would have "35k by [January] 17."

g.  As set forth in the Complaint, throughout January and February 2020, Ay and Cushmore continued to exchange numerous texts discussing the delivery of "documents" and payments issued to Cushmore by

wire transfer.  On January 31, 2020, for example, Ay texted, "Another 8k is wired today," and on February 2, 2020, Cushmore responded, "Just sent invoice."  On March 17, 2020, Ay and Cushmore discussed "re-depositing" a package by wire in order to "close out these deliveries."  And on April 17, 2020, after sending Ay another invoice for a "consultation fee" in an amount less than $10,000, Cushmore texted Ay, "Funds received.  Thank you.  That deal now fully closed." On information and belief, pursuant to this "deal," Defendants received a total of $124,489 in illegal kickbacks from fees Wilson Creek paid to Ay in connection with Wilson Creek's July 2019 contract with Acemar.

h. On or about April 20, 2020, Wilson Creek executed a contract with Acemar for the sale of approximately 70,000 mt of coal, for which Ay received a commission of approximately $77,000 in May 2020. Between May 29 and June 13, 2020, Defendants provided another series of sham invoices to Ay, for which Defendants received various payments via wire transfer, each under $10,000.  For example, as set forth in the Complaint, on June 3, 2020, Ay wrote to Cushmore, "First invoice 9 and change k was wired on Monday" and requested "the next invoice."  The two then discussed Cushmore and/or FTC Partners issuing four or five invoices in a total amount of $40,000.  On June 13, 2020, following an exchange of invoices and payments, Cushmore confirmed that he had received $40,000 in total.  On information and

belief, these payments constituted the illegal kickbacks tendered to Defendants from fees Wilson Creek paid to Ay in connection with Wilson Creek's April 2020 contract with Acemar.

i. On July 28, 2020, Cushmore texted Ay that he expected to meet up with "Cengiz" the week of August 10, to which Ay responded, "I am meantime waiting for you to invoice the balance."

### *Predicate Acts of Money Laundering – 18 U.S.C. § 1956*

Defendants knowingly conducted financial transactions that involved the proceeds of specified unlawful activity with the intent to promote the carrying on of that specified unlawful activity—namely, mail and wire fraud.  In addition, Defendants knew that the transactions were designed to conceal the nature, ownership, source, location, or control of the proceeds of mail and wire fraud and to avoid transaction reporting requirements.  As set forth in the Complaint, on multiple occasions, beginning as early as July 2018 and continuing as late as July 2020, Defendants received funds that were misappropriated from Wilson Creek in connection with vessels of coal that Wilson Creek shipped to Acemar, using Ay as its sales agent.

Each of these fraudulent transactions were designed to conceal the absence of any legitimate basis for the fees paid from Ay and/or HB Maritime to Cushmore and FTC Partners.

### *Predicate Acts of Structuring – 31 U.S.C. § 5324(a)*

Beginning no later than November 2018 and continuing through at least July 2020, Defendants engaged in numerous instances of structuring, to include the

following:

a. On November 28, 2018, Cushmore requested that Ay compensate him via a combination of cash and check payments pursuant to four invoices for sham "consultancy fees," writing, "Don't want to make invoices more than $10k."  Ay confirmed that he would make these arrangements.

b. On January 24, 2019, Ay confirmed five separate payments totaling $36,000, in the amounts of $5,000, $7,000, and three payments of $8,000 to be "ready" in different locations.  On February 1, 2019, Cushmore confirmed that he counted "and it was all there."

c. On February 25, 2019, Cushmore directed that Ay mail him a payment via check to his home address in Florida.

d. On December 29, 2019, Ay requested from Cushmore the "final statement," and Cushmore responded, "there should be a series of invoices all not to exceed us$ 10000 equivalent."  Ay confirmed that he would have $35,000 available by January 17, 2020.

e. On June 3, 2020, Ay texted Cushmore, "First invoice 9 and change k was wired on Monday" and requested "the next invoice."  Cushmore responded on June 4 by texting an invoice in an amount less than $10,000.

f. Later that day, June 4, 2020, Ay requested that Cushmore issue four or five invoices up to $40,000 instead of $38,500 for tax purposes.  On June 5, 2020, Cushmore wrote back that two invoices had already

been "paid / credited" which meant "remaining two would then exceed 10k." Cushmore asked, "Can I make it into three? If 40k and not 38.5 then 40k-(2x-9650)=20.7k. How about 2 x 7500 and then 5700?" Ay responded, "Perfect."

g. On June 6, 2020, Cushmore texted Ay copies of three different invoices from FTC Partners: two invoices in the amount of $7,500, and one invoice for $5,700.

h. On June 13, 2020, Ay texted Cushmore, "So 40k paid ?" Cushmore responded, "Yup."

i. On July 28, 2020, Ay requested that Cushmore "invoice the balance."

Defendants engaged in the aforementioned structuring with knowledge that the financial institutions involved were under a legal obligation to report any currency transaction in excess of $10,000, and Defendants acted with the intent to evade this reporting requirement and with the further intent to conceal their unlawful activity.

There has been no criminal conviction for a violation of the predicate acts and no civil litigation has resulted in a judgment in regard to the predicate acts to date.

The alleged predicate acts form a pattern of racketeering activity in that they were undertaken pursuant to a continuous course of conduct that began, at the latest, in early 2018 and continued through at least June 2020. The alleged predicate acts are related and were part of a common plan to enable Defendants and Ay to obtain personal financial gain as a result of their work on behalf of

managing Wilson Creek's international sales, and to conceal the misappropriation of funds from Wilson Creek.

**6.  RICO Enterprise**

The RICO enterprise is comprised of Cushmore, FTC Partners, and Ay.  The RICO enterprise is a group associated in fact, which shared a common purpose of exploiting Wilson Creek's legitimate international sales business to obtain unlawful kickbacks from funds expended by Wilson Creek.  This was achieved through a fraudulent course of conduct intended to deceive Wilson Creek and deprive Wilson Creek of a portion of Wilson Creek's proceeds from its sales to Acemar and/or Turkish steel companies.  The fraudulent course of conduct was undertaken with the purpose of enabling Defendants and Ay to obtain personal financial gain to Wilson Creek's detriment and to conceal the misappropriation of Wilson Creek's funds.  The enterprise utilized FTC Partners as a conduit for funneling the proceeds of Cushmore's and Ay's unlawful acts.

Defendants Cushmore and FTC Partners are, respectively, an individual and an entity separate from the alleged enterprise, although each was a member of the alleged enterprise.   Defendant Cushmore is a perpetrator of the alleged racketeering activity, and Defendant FTC Partners is a passive instrument.

**7.  The Pattern of Racketeering Activity is Separate from the Enterprise**

The enterprise is distinct from the pattern of racketeering in that the enterprise was formed to orchestrate a theft of the proceeds of Wilson Creek's international sales, and the pattern of racketeering activity constituted the methods and means by which this purpose was achieved.  However, Wilson Creek may

13

properly rely on proof of racketeering activities to establish the existence of the enterprise.

8.  **Relationship Between the Activities of the Enterprise and the Pattern of Racketeering Activity**

The activities of the enterprise are broader than yet include the pattern of racketeering activity described herein and in the Complaint.  In addition to participating in the racketeering activities, the enterprise, through Ay and Cushmore, also engaged in regular, ongoing strategic communications via Whatsapp, phone, and email in an effort to coordinate bids and contracts with Acemar and/or Kardemir and earn business for Wilson Creek so that the enterprise could reap the personal financial benefits from that otherwise legitimate sales business.

9.  **Benefits to the Enterprise**

The benefits the enterprise received from the pattern of racketeering activity include ongoing personal financial gain secured by the fraud perpetrated on Wilson Creek.  By agreeing with Ay to deceive Wilson Creek and to misappropriate funds from the proceeds of Wilson Creek's sales, Cushmore and FTC Partners received hundreds of thousands of dollars in illegal kickbacks, as well as similarly unauthorized gifts, benefits, and forms of compensation outside of the strictures of the legitimate compensation to which Cushmore was otherwise entitled by virtue of his position with Wilson Creek.  In addition, by exploiting Wilson Creek's trust and by securing Wilson Creek's dependence on Cushmore and Ay to facilitate the Company's international sales to Acemar and/or Kardemir, the enterprise ensured a continuous flow of transactions through which Cushmore and Ay sought to

14

funnel and shield their illicit profits.  Indeed, absent the internal investigation arising from Cushmore's misconduct in connection with a separate criminal scheme in Egypt, it is likely that Defendants and Ay would have continued to conspire and engage in a pattern of racketeering activity beyond July 2020.

10. **Effect on Interstate or Foreign Commerce**

The enterprise affected interstate or foreign commerce in that the enterprise relied upon the postal service and interstate and foreign transmission of communications by wire to achieve its unlawful purposes.  In addition, the funds stolen and concealed by the enterprise through its racketeering activities were misappropriated from the proceeds of Wilson Creek's international transactions.

11. **Violation of 18 U.S.C. § 1962(a) – Not Applicable**

12. **Violation of 18 U.S.C. § 1962(b) – Not Applicable**

13. **Violation of 18 U.S.C. § 1962(c)**

The individuals associated with the enterprise are Fred Cushmore and Aysan Ay.  The liable "persons" under the statute are Fred Cushmore and FTC Partners. Cushmore and FTC Partners are separate from the enterprise alleged.

14. **Violation of 18 U.S.C. § 1962(d)**

In addition to committing the substantive RICO violations described in the Complaint and herein, Defendants and Ay also conspired to engage in the predicate acts of mail and wire fraud, money laundering, and structuring set forth above with the purpose of defrauding Wilson Creek of the proceeds of its sales to Acemar and/or Kardemir, for the personal gain of both Defendants and Ay.  In so doing, Defendants knowingly conspired with Ay to facilitate a pattern of

racketeering activity.

The conspiracy began, at the latest, in April 2018, as evidenced by a text message Ay sent to Cushmore on Whatsapp asking him to "include something for me (us) separate than Acemar" in connection with Wilson Creek's bid on an upcoming tender.  On information and belief, Cushmore and Ay agreed no later than April 2018 to build into Wilson Creek's contracts with Acemar a certain commission to be paid to Ay and/or HB Maritime, which Cushmore represented to Wilson Creek was to be paid solely to Ay, when in fact, Cushmore and Ay intended that a portion of the commission would be remitted to Cushmore and/or FTC Partners via illegal kickbacks achieved through a pattern of mail and wire fraud, money laundering, and structuring.

### 15. Alleged Injury to Business or Property

Wilson Creek was injured in its business and property by reason of Defendants' RICO violations.  On information and belief, Defendants deprived Wilson Creek of no less than $237,407 of the proceeds of its sales to Acemar and/or Kardemir, which were unlawfully retained by Defendants.

### 16. Causal Relationship Between Alleged Injury and RICO Violations

By misrepresenting the appropriate commission due to Aysan Ay for his work as Wilson Creek's sales agent and by retaining a portion of those commissions from the proceeds of Wilson Creek's sales to Acemar and/or Kardemir, Cushmore directly caused Wilson Creek to suffer losses.  The pattern of racketeering activity engaged in by Defendants and Ay enabled Defendants and Ay to profit from their unlawful scheme, to Wilson Creek's detriment.

17. **Damages Sustained**

Cushmore and FTC Partners are jointly and severally liable for the treble damages and attorney's fees claimed by Wilson Creek.  The amount of damages will be calculated from, at a minimum, the $237,407 of the proceeds of Wilson Creek's sales misappropriated by Defendants.

18. **Description of Other Federal Claims – Not Applicable**

19. **Description of All Pendent State Claims**

Wilson Creek asserts the following claims under Connecticut law:

a. **Count Three: Conversion (as to all Defendants):** This claim is based upon Defendants' unlawful retention of a portion of commissions tendered by Wilson Creek to Aysan Ay, to which Defendants were not entitled to exercise any right of ownership.

b. **Count Four: Statutory Theft, Conn. Gen. Stat. § 52-564 (as to all Defendants):** Because Defendants knowingly and intentionally deprived Wilson Creek of its property, Defendants' aforementioned acts of conversion also violate Connecticut's statutory theft statute, entitling Wilson Creek to treble damages.

c. **Count Five: Breach of fiduciary duty (as to Cushmore):** By engaging in fraud and self-dealing and advancing his own interests to the detriment of Wilson Creek, Cushmore breached his fiduciary duty to Wilson Creek, which he owed by virtue of his employment relationship, and caused Wilson Creek to suffer damages.

d. **Count Six: Unjust enrichment (as to Cushmore):** Wilson Creek asserts

17

this claim based on the portion of commissions Cushmore unjustly retained to Wilson Creek's detriment, for which Wilson Creek seeks restitution.

e.   **Count Seven: Common laud fraud (as to Cushmore):** Cushmore defrauded Wilson Creek into tendering inflated commissions to Aysan Ay, which Cushmore represented were to be paid solely to Ay and/or HB Maritime, knowing that such commissions included an unlawful kickback to be paid to Cushmore and/or FTC Partners.  Wilson Creek reasonably relied upon Cushmore's representations based on his expertise in the international coal export industry, and based on the fact that it was customary for Wilson Creek to offer commissions to other international sales agents.  As a result of Cushmore's fraud, Wilson Creek has suffered damages.

f.   **Count Eight: Violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b** *et seq.* **(as to Cushmore):** By deceiving Wilson Creek into paying illegitimate commissions to Ay for his own personal benefit and/or for the benefit of FTC Partners, Cushmore engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce, which resulted in an ascertainable loss of money to Wilson Creek.  Pursuant to CUTPA, Wilson Creek seeks punitive damages and reasonable attorney's fees for Cushmore's CUTPA violations.

20. **Additional Information**

Cushmore has pleaded guilty to Count One of an Information charging him with conspiracy to commit a violation of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2, in connection with his role in bribing Egyptian governmental officials to obtain coal contracts for Wilson Creek. *See United States v. Cushmore*, Case No. 2:21-cr-00455-RJC-1 (W.D. Pa. filed Nov. 3, 2021). Cushmore is also named as a co-conspirator in the pending indictment against Charles Hunter Hobson, who served as Cushmore's predecessor as Wilson Creek's Vice President, Northern Appalachian Division Metallurgical Sales & Trading. *See United States. v. Hobson*, Case No. 2:22-cr-00086-RJC (W.D. Pa. filed March 29, 2022). Cushmore is currently awaiting sentencing in his criminal proceeding.

The March 8, 2023 resolution of the criminal matter against Wilson Creek's parent company, Corsa, is publicly available on the Department of Justice website. *See  https://www.justice.gov/criminal-fraud/file/1573526/download* (last accessed June 16, 2023).

Dated: June 16, 2023

      Respectfully submitted,

       */s/ Brian E. Spears*
      BRIAN E. SPEARS (ct14240)
      LESLIE A. CAHILL (ct31242)
      Spears Manning & Martini LLC
      2425 Post Road, Suite 203
      Southport, CT 06890
      T: (203) 292-9766
      F: (203) 292-9682
      Email: bspears@spearsmanning.com
         lcahill@spearsmanning.com

      *Counsel for Wilson Creek Energy LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2023, a copy of the foregoing was filed electronically and served via electronic mail to Daniel R. Alonso, counsel for Defendants, at dalonso@orrick.com.

By: */s/ Leslie A. Cahill*
Leslie A. Cahill
Federal Bar No. ct31242
SPEARS MANNING & MARTINI LLC
2425 Post Road, Suite 203
Southport, CT  06890
Telephone:  (203) 292-9766
Facsimile:  (203) 292-9682
Email:  lcahill@spearsmanning.com